**UNITED STEELWORKERS OF AMER-
ICA, AFL–CIO, an unincorporated
association**

v.

**KNOXVILLE IRON COMPANY, a
corporation.**

No. 3428.

United States District Court
E. D. Tennessee, N. D.

Feb. 21, 1958.

Duncan, Duncan & McGee, Knoxville, Tenn., Cooper, Mitch & Black, Hugo L. Black, Jr., Birmingham, Ala., Arthur J. Goldberg, Gen. Counsel, David E. Feller, Associate Gen. Counsel, United Steelworkers of America, AFL-CIO, Washington, D. C., for plaintiff.

Frantz, McConnell & Seymour, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This suit was filed by United Steelworkers of America, AFL-CIO, an unincorporated labor organization, which represents employees in industries engaged in businesses that affect interstate commerce. Plaintiff, who will be referred to as the Union, was certified by the National Labor Relations Board as the collective bargaining agent of production and maintenance employees of defendant, Knoxville Iron Company, in all matters respecting wages and working conditions. Knoxville Iron Company, whose principal place of business is Knoxville, Tennessee, will be referred to as the Company. Jurisdiction is conferred by 29 U.S.C.A. § 185 and 28 U.S.C.A. § 1337.

The Union, as exclusive bargaining agent for the employees of the Company, entered into a contract with the Company that became effective on April 3, 1956, which was to remain in force until April 3, 1957, with an automatic renewal provision from year to year unless either party gave 60 days notice in advance of the annual expiration date of a desire to change, amend or cancel said agreement. Check-off provisions for Union initiation fees and Union dues are a part of the contract.

Beginning in October, 1956, and continuing over a period of many months numerous employees gave written notice to the Company of their withdrawal from the Union and revoked their previous written requests to the Company to deduct Union dues from their pay checks. The Company recognized these requests by discontinuing the deductions from the pay checks of all Union members who made such requests.

To enforce the check-off provisions of the collective bargaining agreement the complaint was filed. The specific relief sought in the prayer of the complaint is:

(a) A mandatory injunction compelling the Company to perform the contract of April 3, 1956, by continuing to deduct Union dues from employees' wages in accordance with their written authorization. (The Union claims that the contract was automatically renewed on April 3, 1957 for an additional year because neither party gave the 60 days notice in advance of April 3, 1957 of a desire to terminate, and the parties have been operating under the terms of the contract since the annual expiration date).

(b) A judgment in a sum equal to the amount the Company would have paid the Union had the Company carried out its contractual obligation to remit check-off dues to the Union in accordance with written authorization of the employees.

A hearing was set for February 6, 1958 on the Union's motion for a preliminary injunction for the mandatory relief sought in the prayer of the complaint. Answer was filed raising a number of defenses.

The Court indicated at the beginning of the hearing on February 6, 1958, that

the legal questions raised in the answer should be settled before oral proof was heard on disputed issues of fact. But a number of employees and executives of the Company were present and at the joint request of the interested parties oral proof was heard. At the conclusion of the proof, which consumed more than one day, the parties were given time in which to file briefs in support of their respective contentions. Briefs have been filed.

It is the contention of the Company that Section 5, Article 1, of the collective bargaining agreement violates Sections 50–208, 50–209 and 50–210, T.C.A., and are therefore illegal and unenforceable. These provisions are commonly referred to as the Tennessee "Right to Work Law." Section 5 of Article 1, is the check-off provision of the bargaining agreement. It provides in substance that the Company will deduct from the first pay period ending each month, Union dues for the preceding month as well as initiation fees for each new or reinstated member from whom an authorization has been received and will promptly remit the deductions to the International Secretary-Treasurer of the Union. It also provides that all employees who are members of the Union in good standing on the date of the signing of the collective bargaining agreement, and all employees who may become members after that date *"shall, as a condition of employment, maintain their membership in the Union in good standing as to payment of dues and initation fees for the duration of this Agreement. Each new employee hired thereafter shall sign and furnish to the Company at the time of his employment an application card for membership in the Union.  * * *."* (Italics supplied.)  The application for Union memberships shall not become effective until 30 days after employment and the employee is given not less than 15 days and not more than 30 days after the date of his employment to mail to the Company a written notice of his decision not to become a member of the Union.

Section 52–208, T.C.A., makes it unlawful to deny, or attempt to deny, employment to any person belonging to, or failing to belong, or resigning from any labor Union or organization.

"50–208. Denial of employment because of affiliation or nonaffiliation with labor union unlawful.—It shall be unlawful for any person, firm, corporation or association of any kind to deny or attempt to deny employment to any person by reason of such person's membership in, affiliation with, resignation from, or refusal to join or affiliate with any labor union or employee organization of any kind."

Section 50–209, T.C.A., makes it a violation of law to contract, either orally or in writing to exclude from employment any person because of membership in, resignation from, or refusal to join any labor union.

"50–209. Contracting for exclusion from employment because of affiliation or nonaffiliation with labor union unlawful.—It shall be unlawful for any person, firm, corporation or association of any kind to enter into any contract, combination or agreement, written or oral, providing for exclusion from employment of any person because of membership in, affiliation with, resignation from, or refusal to join or affiliate with any labor union or employee organization of any kind."

Section 50–210, T.C.A., makes it unlawful to exclude from employment any person for failure to pay Union dues or assessments of any kind. The following is the language of this Section:

"50–210. Exclusion from employment for payment of or failure to pay union dues unlawful.—It shall be unlawful for any person, firm, corporation or association of any kind to exclude from employment any person by reason of such person's payment of or failure to pay dues, fees, assessments, or other charges to any labor union or employees organization of any kind."

The Supreme Court in Tennessee in sustaining the constitutionality of the aforementioned Act used this language:

"The Act before us in substance prohibits an employer from discriminating against any employee, present or future, because of his membership or nonmembership in a labor organization. It further prohibits an employer and a union from entering into any contract or agreement, written or oral, by the terms of which an employee or prospective employee would be discriminated against because of his membership or nonmembership in a labor organization." Mascari v. International Brotherhood, etc., 187 Tenn. 345, 354, 215 S.W.2d 779, 782.

The Supreme Court again had before it these statutes in the case of Pruitt v. Lambert, 1957. In that case the Chancery Court in Memphis enjoined a labor Union from picketing for a proposed collective bargaining contract requiring the employer to recognize the Union as the exclusive bargaining agent for Union and non-Union employees, requiring the head meat cutter to be a Union member, and requiring a journeyman meat cutter to be on duty at all times. The Court in holding that the proposed contract of the Union was violative of the public policy of the state, said in part:

"It seems obvious that this contract is contrary to public policy of this State in more than one respect. * * * Secondly, the provision that the head meat cutter shall be one recognized and qualified by the Union places it within the power of the Union to decline with or without reason to recognize any of the present employees as qualified, so that the effect would be to require the employer to hire a Union head meat cutter. Also, the provision that there shall be a Journeyman meat cutter on duty at all times, etc., who shall be a member in good standing with the Union has a similar adverse effect upon the non-union employees because where there is no necessity for more than one Journeyman meat cutter to be on duty, that one would necessarily have to be a member of the Union to the exclusion of the non-union. Both of these provisions violate the spirit, if not the letter, of their right to work statute. T.C.A. Sec. 50–208 et seq." Pruitt v. Lambert, Tenn., 298 S.W.2d 795, 797.

The latest pronouncement of the Tennessee Supreme Court on the Tennessee "Right to Work" statutes was in the case of Finchum Steel Erection Corp. v. Local Union 384, etc. December 6, 1957. In that case the Union made the contention that the contract under which relief was sought by the employer was violative of the Tennessee "Right to Work" statute. The Court in upholding the Union's contention in an opinion by Chief Justice Neil said in part:

"We think the language of 50–209, T.C.A., proscribes the exclusive employment of either union or non-union labor. If any contract, either expressly, or by clear inference, undertakes to exclude the employment of either union or non-union workers it violates the public policy of this State. The courts cannot take notice of such contracts and thus permit them to be made the basis for the assertion of lawful rights and obligations." Finchum Steel Erection Corp. v. Local Union 384, etc., Tenn., 308 S.W.2d 381, 384.

Check-off provisions of a collective bargaining contract was before the Court of Appeals of the Eastern Section in the case of Murtha v. Pet Dairy Products Co., 314 S.W.2d 185, copy of which was attached to the Union's brief. Check-off provisions were sustained as to 18 of the employees who undertook to revoke their authorizations before the expiration date of the collective bargaining agreement while the revocations of 234 other employees were upheld because made in the interval between the date of expiration of the contract that expired on May 31, 1955 and October 25, 1955, the date the new contract was executed. Legality of the check-off provisions in

the contracts that were involved in that case was not challenged, hence, not considered by the Court.

Right of the states to prohibit contracts or agreements requiring membership in a Union as a condition of employment is recognized by Congress. 29 U.S.C.A. Sec. 164(b) of the Labor Management Relations Act of 1947, provides:

"(b) Nothing in this subchapter shall be construed as authorizing the execution of application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution of application is prohibited by State or Territorial law."

Legislation on this subject in a number of states has been sustained by the Supreme Court of the United States. Algoma Plywood & Veneer Company v. Wisconsin Emp. Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691; Local Union No. 10, etc., v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946; Lincoln Federal Labor Union No. 19129, A.F. of L. v. Northwestern Iron and Metal Company, 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212; and American Federation of Labor v. American Sash and Door Co., 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222.

■ Construction of the Tennessee "Right to Work" statutes by the Tennessee Supreme Court is binding on the federal courts. Chicago, Duluth & Georgian Bay Transit Co. v. Nims, 6 Cir., 252 F.2d 317. See also, Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

Mr. Marshall, representative of the Company, wrote Mr. Shill, representative of the Union, on April 27, 1956, the date the collective bargaining agreement was executed, that the Company was signing upon the Union's representation that the Union membership check-off provisions did not violate the Tennessee law, but if it should be determined that those provisions violated the Tennessee law, the contract would yield to the law. The letter stated, "We especially think the provisions that all employees at date of signing are Union members in good standing and that all employees as a condition of employment must maintain Union membership violate the law. We are quite sure that the requirement that each new employee hired hereafter must sign a Union application card violates the law."

■ Pertinent parts of the provisions of the collective bargaining agreement to which the Marshall letter refers are as follows:

"All employees who at the date of the signing of this Agreement are members of the Union in good standing as to payment of dues and initiation fees and all employees who become members after that date *shall*, as a condition of employment, maintain their membership in the Union in good standing as to payment of dues and initiation fees for the duration of this Agreement." (Italics supplied.)

It is obvious that this provision not only attempts to but does, in fact, deny employment to any employee who fails to maintain his membership in the Union by payment of dues. This provision discriminates against non-Union employees and violates both the letter and spirit of the statutes under consideration.

■ The other provision in the collective bargaining agreement referred to in the Marshall letter reads:

"Each new employee hired thereafter shall sign and furnish to the Company at the time of his employment an application card for membership in the Union. Such application card shall not become effective until the expiration of thirty (30) days after the date of his employment and that it shall not become effective if such employee shall mail to the Company a written notice of his election not to become a member of the Union, which notice shall be postmarked not less than fifteen (15) days and not more than thirty

(30) days after the date of his employment. The Union shall be given reasonable opportunity to inspect such notices received by the Company, and the Company shall promptly furnish the Union a copy of each such notice received by it."

It is to be noted that the foregoing provision of the contract prohibits the employment of anyone unless he signs an application card for membership in the Union and furnishes the card to the company at the time he goes on the job. It is contended that the election provision for Union membership contained in the concluding part of the paragraph negatives the idea that Union membership is a prerequisite for employment. This may be correct, but the fact remains that the provisions as a whole makes Union membership a prime factor in securing work. When viewed from a realistic standpoint and read in relation to that part of the contract that requires payment of Union dues to maintain employment, the result is inescapable that a person must join the Union and pay Union dues in order to procure and maintain employment. This violates the letter and spirit of the above quoted Tennessee statutes.

Counsel for the Union contends that Section 5, Article 1, is severable from the other provisions of the contract and therefore does not affect their validity. There is good authority for this contention as many of the courts, perhaps the majority, have held that an illegal provision in a collective bargaining contract may be severed from the legal provisions, and that the legal provisions may be enforced. 14 A.L.R.2d 846. But we fail to see how this principle of law, if applicable to this case, can help the Union since the entire relief sought by it is based on the illegal provision of the contract.

In view of the conclusion that the check-off provisions of the contract are unenforceable, it is not necessary to pass on the Company's contention that the contract expired on April 3, 1957. The preponderance of the evidence showed that Mr. Shill, the Union representative, wrote a letter on January 10, 1957, in which he expressed the Union's desire to amend the contract. Meetings were held by representatives of the Union and the Company on April 1st and April 15th, 1957, in which the Union representative insisted on a ten cent per hour increase in pay, which the Company refused. The parties never agreed on the terms of a new contract. Their last meeting was held on April 15, 1957.

Mr. Marshall made holiday changes for the year April 3, 1957 to April 3, 1958, under the old contract at a wage discussion meeting on April 10, 1957, and from April 3, 1957, to the date of the trial the wages paid were the wages provided for under the old contract. The holidays, vacation days, seniority rights, hour's work and grievance procedure provided for in the old contract have been followed by the parties to the date the suit was filed.

The Company has continued to check off the dues of approximately 50 employees out of a number which was originally around 200. These are the employees who have not revoked their authorizations to the Company for Union check-off dues and who have not withdrawn their membership from the Union. The Company has discontinued check-off Union dues of the employees whose names are set forth in the complaint and on the dates set forth in the complaint because the Company has taken the position that the check-off provisions are illegal and the employees have revoked their authorization to the Company to make the deductions. If the check-off provisions were legal, the Company would be liable to the Union for the dues of the employees it agreed to deduct for the year April 3, 1956 to April 3, 1957, because the employees agreed for the deductions to be made and authorized the Company to make them for that period which authorizations were irrevocable.

As to whether Mr. Shill's letter of January 10, 1957 to the Company, expressing the Union's desire to amend the

contract, caused the contract to terminate on April 3, 1957, need not be decided.

By way of summary, the Court concludes: (a) That Section 5, Article 1, which are the check-off provisions of the contract, violates Sections 50–208, 50–209 and 50–210 T.C.A., and are unenforceable. (b) That the Union is not entitled to any of the relief sought in the complaint because of the illegality of the aforementioned check-off provisions.

Let an order be presented in conformity with the views herein expressed.