UNITED ELECTRICAL, RADIO AND
MACHINE WORKERS OF AMER-
ICA (UE), LOCAL 107

v.

WESTINGHOUSE ELECTRIC
CORPORATION.

Civ. A. No. 29166.

United States District Court
E. D. Pennsylvania.

May 19, 1964.

Levin, Levin & Levin, Leonard Levin, Philadelphia, Pa., for plaintiff.

Edward W. Madeira, Jr., Philadelphia, Pa., for defendant.

KRAFT, District Judge.

Plaintiff brought this action under § 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a), against an employer charging breach of a collective bargaining agreement by failure to pay over check-off dues of employees.

The parties entered into an express stipulation upon the facts and the exhibits attached, "subject to the understanding, however, that the said stipulation of facts shall be construed as evidentiary only, with full power in the Court to draw such inferences from the

882

stipulated facts as may appear to such Court to be relevant."

In accordance with the stipulation, we make the following

## FINDINGS OF FACT

1. In November 1950, United Electrical, Radio and Machine Workers of America (UE), plaintiff's parent organization, acting on behalf of plaintiff and various other locals, entered into a collective bargaining agreement with defendant, which was later amended, modified and supplemented.

2. The agreement covered such local unions of plaintiff's parent organization as had been, through a National Labor Relations Board (Board) certification, "lawfully designated as the exclusive bargaining representative for the purposes of collective bargaining * * *"

3. Several years prior to the events hereinafter set forth, plaintiff had been certified by the Board as the collective bargaining agent at defendant's plant at Lester, Pennsylvania, for a bargaining unit composed of certain salaried employees, being the unit here involved, and another unit not so involved.

4. Under Section VIII of the agreement, defendant agreed for "the duration of the agreement" to "deduct from the first pay of each month Union dues and promptly remit same" to the locals for those employees in the bargaining unit covered by the agreement who had signed written authorizations on the form prescribed in the agreement.

5. Although under no compulsion so to do, a large number of employees in the bargaining unit who were members of the plaintiff union had duly executed authorizations for check-off. Such authorizations were specified to be of unlimited duration unless notice of intention to terminate was given within specific time periods provided in the authorization. None of the employees whose authorizations are here involved ever specifically revoked their authorizations as provided therein.

6. Section XX of the agreement provided that the then current term would expire on October 15, 1960. It further provided, however, inter alia, that the agreement would automatically renew itself for successive periods of one year, in the absence of service of written notice of intent to terminate the agreement by either party at least sixty days prior to the termination of the then current term.

7. In June 1960, the Westinghouse Salaried Employees Association (WSEA), a rival union, petitioned the Board for a certification election to represent the bargaining unit here involved, and, on September 29, 1960, the Board conducted an election pursuant to a stipulation joined in by all parties in interest.

8. The results of the said election were inconclusive. Although WSEA received a plurality, it failed to receive the majority necessary for Board certification. There were, however, 12 challenged ballots which would have been sufficient to affect the outcome of the election. These challenged ballots had not been counted and were sealed pending a Board hearing to determine the validity of the challenges.

9. Meanwhile, neither plaintiff nor defendant served any notice upon the other of an intention to terminate the agreement as provided for in Section XX of the agreement. The only communication between the parties in relation to that subject was a letter from defendant dated October 14, 1960, the day before the expiration of the then current term, which indicated that if plaintiff ultimately prevailed in the still undetermined Board election, defendant would seek modification in the agreement insofar as it applied to the bargaining unit.

10. Defendant, in compliance with the terms of the agreement, and following its practice over many years, continued to check off the dues of plaintiff's members who had submitted authorizations under Section VIII of the agreement, and to remit the same up to and including October 1960.

11. Defendant continued to check off the dues for the months of November and

December 1960, and January 1961, but has refused to remit or account for these dues to the plaintiff. Instead, defendant has insisted upon retention of these dues, in escrow, over plaintiff's protest, although no adverse claim thereto has ever been asserted.

12. On January 26, 1961, nine of the twelve challenges to the ballots of the Board certification election of September 29, were overruled and a new tally of ballots was taken. This tally established that the rival union, WSEA, had obtained a majority; and, on February 1, 1961, the Board certified WSEA as the exclusive bargaining agent for the bargaining unit.

13. No claim to the checked off dues still in defendant's possession has been asserted by WSEA or by any individual employee from whose salary the dues were deducted.

14. The net amount of the checked off dues, after deduction because of withdrawing members who had cancelled their dues authorizations, and other deductions for certain expenses in connection with the grievance procedure, in accordance with the agreement, was $7,924.00.

## DISCUSSION

■ On the question of jurisdiction, we need only to refer to the recent opinion of the Court of Appeals of this Circuit in Roadway Express, Inc. v. General Teamsters, Chauffeurs and Helpers Union, Local 249 (3rd Cir.) 330 F.2d 859 at p. 861:

> "The complaint properly averred a cause of action under § 301 of the Act. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 [82 S.Ct. 1318, 8 L.Ed.2d 462], (1962). Hence the District Court had jurisdiction over the claim. Whether such averments have merit or not is immaterial on the question of jurisdiction since that is determined from the face of the complaint. Hall v. Sperry Gyroscope Co., etc., 183 F.Supp. 891 (D.C.N.Y.1960)."

Upon the merits, the enforceability of the contract hinges upon plaintiff's representative status. It is our considered judgment that plaintiff was the exclusive bargaining representative while its certification was in force, i. e., until February 1, 1961.

■ While some confusion and conflict appears among the cases, we take it to be the general rule that once a union has been duly certified by the Board as the collective bargaining agent for an employee unit, that status is presumed to continue unless and until the certification of such union is terminated by action of the Board. Brooks v. Labor Board, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); Parks v. Atlantic Printing Pressmen & Assistants Union, 243 F.2d 284 (5th Cir. 1957); Lewis Food Co. v. Los Angeles Meat & Provision Drivers, 159 F.Supp. 763 (S.D.Calif.1958).

*For present purposes*, we think the applicable rule is that so well stated in National Labor Relations Bd. v. Sanson Hosiery Mills, 195 F.2d 350 (5th Cir. 1952), at p. 352:

> "Although certification of a bargaining representative by the Board is not intended to create a permanent relationship without regard to new situations that may develop, there must be a reasonable measure of stability to the relationship so established, as it is one of the objectives of the Act to stabilize as well as improve industrial relations. Such a certification, when lawfully made, must be respected by the employer until changed conditions are reflected by a later ruling by the Board altering or setting aside the certification. This is true, even though the bargaining agent so designated has lost its majority representation of the employees by reason of the subsequent defection of some of those originally voting for it as their representative. The existing certification must nevertheless be honored until lawfully rescinded."

\*  \*  .\*  \*  \*  \*

"Nor can the employer decide for itself whether the Union has lost its bargaining status, and deciding that it has, refuse to deal with it further. Whether or not the Union has lost that status is for the Board to determine upon orderly statutory procedure. N. L. R. B. v. Prudential, 6 Cir., 154 F.2d 385, headnote 10. Meanwhile, it is the duty of the employer to deal with the duly certified Union."

The Court of Appeals for our Circuit has, more than once, applied the same principle. See, e. g., National Labor Relations Board v. Swift & Co., 162 F.2d 575 (3rd Cir. 1947), at p. 582:

"The rule that a Board's certification cannot be disregarded by an employer and that the certification is valid until declared invalid or replaced by the Board, is well-settled: National Labor Relations Board v. May Department Stores Company, 8 Cir., 146 F.2d 66, 70 and the cases cited therein, (affirmed with modifications 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145)."

Reason and experience commend that rule as consonant with the underlying purpose of the statute, which is "industrial peace". Brooks v. Labor Board, 348 U.S. 96, 103, 75 S.Ct. 176, 99 L.Ed. 125 (1954). We agree with plaintiff that, in the present circumstances, any other rule "would necessitate an unfortunate hiatus during which the employees in effect would be deprived of any collective bargaining representation during such period of time (here extending from September 29, 1960, to February 1, 1961) during which a pending election remained unresolved."

It follows that, under Section XX of the agreement, the contract was automatically renewed, and plaintiff's rights thereunder continued, until the Board's certification of WSEA, on February 1, 1961.

We have carefully considered defendant's able and comprehensive brief, and the numerous authorities therein cited, and find it appropriate to make but one comment thereon. Defendant calls our attention to N. L. R. B. v. Small Tube Products, Inc., 319 F.2d 561 (3rd Cir. 1963), wherein the Court stated at p. 563:

"There can be no doubt since the Supreme Court's decision in Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, that when the Board certifies a Union as majority representative, its status is immune from challenge for one year and after that period an employer may refuse to bargain with the Union if it has 'fair doubts' as to the Union's continuing majority."

In the Brooks case, the Supreme Court, 348 U.S. at p. 104, 75 S.Ct. at p. 182, stated with respect to this rule that, "This, too, is a matter appropriately determined by the Board's administrative authority." We think this rule has no application here. The question before us involves more than a mere refusal to bargain. The rule, which has been applied many times, is undoubtedly valid in the appropriate factual context. However, abstract general principles do not decide concrete cases. As stated in United States v. E. I. Du Pont & Co., 366 U.S. 316, at p. 357, 81 S.Ct. 1243, at p. 1266, 6 L.Ed.2d 318 (1961):

"Any apparently applicable policy or rule, abstractly stated, must be related to the specific circumstances of a particular case in which it is invoked and applied. Care must be taken to consider phrases used in relation to the particular facts of the cases relied on."

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. For purposes of collections of dues, the plaintiff's status as exclusive bargaining representative for the bargaining unit of defendant's salaried workers remained in full force and effect until the certification of the rival Union, WSEA, on February 1, 1961, and the collective bargaining agreement of November 1950, remained in full force

and effect until the certification of the rival Union, WSEA, on February 1, 1961.

3. Defendant's refusal to remit or account to the plaintiff for union dues checked off, pursuant to authorization, for the months of November and December 1960, and January 1961, was a breach of the agreement.

4. Plaintiff is entitled to judgment against defendant in the sum of $7,924.00, with interest from January 25, 1961.