**INTERNATIONAL BROTHERHOOD OF OPERATIVE POTTERS, AFL–CIO,**

and

**Local Union No. 355, International Brotherhood of Operative Potters, AFL–CIO,**

v.

**TELL CITY CHAIR COMPANY.**

No. EV 68–C–33.

United States District Court
S. D. Indiana,
Evansville Division.

Dec. 9, 1968.

---

John C. Cox, Evansville, Ind., for plaintiffs.

Joseph E. Finley, Cleveland, Ohio, for plaintiffs.

Ralph Zoercher, Tell City, Ind., for defendant.

## MEMORANDUM OPINION

NOLAND, District Judge.

This action, brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, came before the Court upon the plaintiffs' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion is supported by an affidavit of Lester Null, Third Vice President of the plaintiff, International Brotherhood of Operative Potters, AFL-CIO. The defendant, Tell City Chair Company, has filed no counter-affidavits and defendant further states that the contentions of Mr. Null's affidavit should be accepted as true.

There is no issue as to any material fact, the parties conceding the following to be the facts:

Plaintiff International Brotherhood of Operative Potters, AFL-CIO, and its affiliated Local Union No. 355, are labor organizations representing certain of the defendant's employees. Defendant is an industry affecting commerce within the meaning of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The plaintiffs and the defendant are parties to a collective bargaining agreement entered into on November 13, 1967, Paragraph 2 of which is a check-off clause providing that the defendant will deduct 1% of the gross earnings of those of its employees from whom it receives signed authorization cards providing for payment of said monies to plaintiff International.

Defendant received signed authorization cards from many of its employees. These are the standard authorization cards generally used by the International throughout the country; said authorization for a check-off is irrevocable for one year or until the expiration of the collective bargaining agreement, whichever occurs first. Defendant checked off dues of all employees having submitted cards until certain employees revoked their authorizations, before either the expiration of a year or the termination of the bargaining agreement. Defendant thereafter refused to check off the dues of the employees who had revoked their authorizations.

The plaintiffs seek a declaratory judgment that the defendant has thereby violated Paragraph 2 of the bargaining agreement; the defendant relies on Burns' Ind.Stat.Ann. § 40–214 (1965 Repl.), which provides in pertinent part:

"Purposes For Which Deductible Assignments May Be Made.—Any assignment of the wages of an employee hereafter made shall not be valid unless: (a) It is in writing and signed by the employee personally, and is, *by its terms revocable at any time by the employee upon written notice to the employer, and such assignment is agreed to in writing by the employer.* (b) An executed copy thereof is delivered to the employer within ten (10) days after its execution. (c) It is made for the purpose of paying the: 1. * * * 2. * * * 3. * * * 4. * * * 5. Dues to become owing by the employee to a labor organization of which he or she is a member. * * * *" (Emphasis added)

Obviously, if the Indiana statute controls the authorizations were invalid *ab initio* and defendant may properly recognize revocations.[1]

The plaintiffs proceed under two separate arguments. First, they argue that the force of the Indiana statute has been completely pre-empted in this case by federal regulations of check-off clauses under Sections 7, 8 and 302 of the La-

---

1. The Indiana courts have repeatedly held Burns' § 40–214 constitutional. State v. Martin, 193 Ind. 120, 139 N.E. 282, 26 A.L.R. 1386 (1923); Cleveland, C.C. & St. L. R. Co. v. Marshall, 182 Ind. 280, 105 N.E. 570 (1914).

bor Management Relations Act of 1947, as amended, being 29 U.S.C. §§ 157, 158 and 186. Second, plaintiffs argue that only the principles of federal labor law apply to cases arising under § 301 of the L.M.R.A., 29 U.S.C. § 185; they urge that the substantive law to be applied is federal law and that incompatible local regulations, such as Burns' § 40–214, must give way. Under federal labor law the check-off clause and the authorizations would be valid, enforceable and irrevocable for one year, or until expiration of the bargaining agreement, whichever first occurred. The authorization cards are drafted in strict compliance with § 302 of the L.M.R.A., 29 U.S.C. § 186.[2]

■ ■ The sole question before the Court, therefore, is whether federal law alone controls this controversy under § 301 of the L.M.R.A., or whether the Indiana statute may be applied within the framework of the federal labor law. It is the considered judgment of this Court that in this suit arising under § 301 of the L.M.R.A., the substantive law to be applied is federal labor law, and that Burns' Ind.Stat.Ann. § 40–214 (1965 Repl.) is inconsistent with the federal law and hence can properly have no application in this suit. The plaintiffs are therefore entitled to a judgment declaring that the defendant is in violation of the collective bargaining agreement.

In Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), the Supreme Court held that the substantive law applicable in suits under § 301 is federal law and that the federal courts have a duty to fashion such law from the policy of the national labor laws. The Court further held that "state law, *if compatible with the purpose of § 301,* may be resorted to in order to find the rule that will best effectuate the federal policy." (Emphasis supplied.) Thereafter, in 1962, came the decision which controls the case at bar. In Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, the Court held that, under § 301, substantive federal law must be paramount and that "incompatible doctrines of local law must give way to principles of federal labor law." Further, the Court held that the subject matter of § 301 peculiarly calls for uniform law.

The rationale of the *Lucas Flour* decision was that the possibility of contract terms being differently interpreted by two applicable systems of law would inevitably impede the efficacy of the collective bargaining agreement as "the keystone of the federal scheme to promote industrial peace." *Lucas Flour*, supra. The facts of the case at bar illuminate the wisdom of that rationale. Plaintiffs and defendant are before this Court in disharmony, simply because

2. § 302 of the L.M.R.A. states in pertinent part, and with emphasis supplied, that: "(a) *It shall be unlawful* for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—
(1) to any representative of any of his employees who are employed in an industry affecting commerce; or
(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or (3) * * * (4) * * * (b) (1) It shall be

unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section. (2) * * * (c) The provisions of this section shall not be applicable (1) * * * (2) * * * (3) * * * (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; (5) * * * (6) * * *."

they urge the applicability of divergent systems of law; they will undoubtedly return tomorrow, in further disharmony, if this Court permits their contract to be interpreted under both state and federal law. Such is not the policy of our federal labor laws.

■ The defendant urges that Burns' § 40–214 may apply here because it is neither incompatible nor inconsistent with the doctrines of federal labor law. The argument fails. Under § 302 of the L.M.R.A. the union is permitted to bargain for and receive a check-off of dues irrevocable for one year, or until the expiration of the collective bargaining agreement, whichever occurs first; under Burns' § 40–214, a check-off authorization which is irrevocable for *any* period of time is *per se* invalid. The two provisions are clearly inconsistent, hence the Indiana rule must give way.[3]

■ The plaintiffs' pre-emption argument is also persuasive. In San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the landmark case in the area of federal pre-emption of state labor regulations, the Court held that:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that the state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted

through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes."

■ The issue of pre-emption thus hinges upon the extent of the regulation of check-offs undertaken by Congress. Check-offs are regulated primarily by § 302 of the L.M.R.A., which specifies the conditions necessary for a valid check-off, and provides for both injunctive relief and criminal penalties. Additionally, the National Labor Relations Board has authority to regulate check-offs under Section 8 of the L.M.R.A. N. L. R. B. v. Penn Cork and Closures, Inc., 376 F.2d 52 (2d Cir. 1967). It thus appears that Congressional regulation of the area of check-offs is sufficiently pervasive and encompassing to pre-empt the force of Burns' § 40–214. Automobile Workers v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978 (1950).

■■ It is clear that this case presents an actual controversy within the meaning of 28 U.S.C. § 2201 (1958), and that the granting of declaratory relief is proper. Black-Clawson Co., etc., Inc. v. Int'l Ass'n of Machinists, 313 F.2d 179 (2d Cir. 1962); Int'l Longshoremen's Ass'n v. Seatrain Lines, Inc., 326 F.2d 916 (2d Cir. 1964). Further, the possible existence of some other adequate remedy does not preclude the granting of declaratory relief. Rule 59, Federal Rules of Civil Procedure.

An appropriate order may be submitted.

3. Cf., International Union, etc. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L. Ed.2d 192 (1966).