SeaPAK, a division of W. R. Grace Corporation, Plaintiff,

v.

INDUSTRIAL, TECHNICAL AND PROFESSIONAL EMPLOYEES, DIVISION OF NATIONAL MARITIME UNION, AFL–CIO, Defendant.

NATIONAL MARITIME UNION OF AMERICA, AFL–CIO, Plaintiff,

v.

W. R. GRACE & CO., Inc., Defendant, (Transferred from New York).

Civ. A. No. 930.

United States District Court
S. D. Georgia.

June 25, 1969.

John Gayner, Bennet, Gilbert, Gilbert & Whittle, Brunswick, Ga., John Bachellor, Jr., Fisher & Phillips, Atlanta, Ga., for plaintiff.

Q. Robert Henry, Adams & Henry, Brunswick, Ga., Stanley B. Gruber, New York City, N.Y., for defendant.

ORDER

LAWRENCE, Distict Judge.

SeaPak which is a division of W. R. Grace Corporation brought an action against the National Maritime Union (NMU) seeking declaratory relief in respect to the right of the labor organization to insist upon continued weekly deductions of union dues from the payroll of three employees after they had requested discontinuance of checkoff.

The Checkoff Article of the Agreement between SeaPak and National Maritime Union, which was entered into on August 21, 1968, provides:

"During the life of this agreement the Company agrees that it will deduct union dues each week from the pay of those employees for whom it has valid and enforceable dues deduction authorizations, commencing with the next

pay period of the month following the signing of this Agreement. The Company will remit these deductions every fourth week by check to the officers designated by the Union."

SeaPak contends that the checkoff authorization furnished by the three employees involved in this case must be revocable at "will" as is required by Section 54–906 of the Georgia Code which reads: "No employer shall deduct from the wages or other earnings of any employee any fee, assessment, or other sum, of money whatsoever, to be held for or to be paid over to a labor organization, except on the individual order or request of such employee, revocable to [at] the will of the employee." [1]

On the same day that SeaPak filed its complaint in the Brunswick Division of this Court NMU commenced an action in the United States District Court for the Southern District of New York in which the Union sought injunctive relief from SeaPak's failure to deduct and remit dues from the wages of employees furnishing authorizations conforming to Section 302(c) (4) of the Labor-Management Relations Act (also referred to as the Taft-Hartley Act). That Section which declares it unlawful for employers to pay money to any labor organization or officer thereof makes an exception with respect to money deducted in payment of membership dues in a union, "*Provided,* That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner." Title 29 U.S. C. § 186(c) (4).

The New York suit was transferred to this Court under 28 U.S.C. § 1404(a). Each party moves for summary judgment. Helpful briefs have been presented by both sides and oral argument heard. Counsel agree that the issues in the two actions are identical and present purely a question of law. Jurisdiction of the Federal courts is established under Title 29 U.S.C. § 185(a). [2]

The litigation brings into collision the checkoff provision of the Georgia "Right-to-Work" law and the clause dealing with dues deductions in the Federal Labor-Management Relations Act, 1947. Are authorizations for deduction of union dues revocable at the will of the employee, as provided by Georgia law, or are they irrevocable for not more than one year, as set forth in the Federal statute?

NMU contends that Congress has preempted the field and that the Federal Act precludes State legislation on the particular subject. SeaPak asserts that the Georgia "Right-to-Work" statute is excluded from Federal preemption by Section 14(b) of the Taft-Hartley Act which states that nothing therein "shall be construed as authorizing the execution * * * of agreements requiring membership in a labor organization as a condition of employment in any State * * * in which such execution or application is prohibited by State * * * law." See 29 U.S.C. § 164(b).

The same preemption question was before a Federal District Court in Indiana in International Brotherhood of Operative Potters, AFL and CIO et al. v. Tell City Chair Company, D.C., 295 F.Supp. 961, decided November 25, 1968. An Indiana statute required union dues as-

1. The word "to" after "revocable" is patently an error in the enrolled Act. See editorial comment under § 54–906.

2. This Section (§ 301 of the Act) confers jurisdiction upon district courts of the United States in suits for violation of contracts between an employer and a labor organization representing employees in

an industry affecting commerce. Under § 301, it has been said that "incompatible doctrines of local law must give way to principles of federal labor law." Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 102, 82 S.Ct. 571, 7 L.Ed.2d 593. See also Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972.

signments to be "revocable at any time by the employee." In granting a summary judgment to the Unions District Judge Noland held that the congressional regulation of checkoff is "sufficiently pervasive and encompassing to pre-empt" the force of the state statute which "is inconsistent with the federal law and hence can properly have no application in this suit." [3] In State of Utah v. Montgomery Ward & Co., 120 Utah 294, 233 P.2d 685; cert. den'd., 342 U.S. 869, 72 S.Ct. 111, 96 L.Ed. 654, the Supreme Court of that State was faced with the similar issue as to whether Section 302(c) (4) preempted the Utah statute requiring an employer to honor checkoff authorizations irrespective of whether a collective bargaining agreement existed. "By the general prohibition contained in section 302(a) and (b), tempered only by the exceptions in sec. 302(c) and the conditions attached thereto, Congress," the Court said, "has effectively preempted the entire field of legislation in regard to the 'checkoff' and thus has precluded the States from legislating on that subject." [4]

In their original briefs SeaPak's counsel relied heavily upon the first version of Operative Potters v. Tell City Chair Co., *supra*. However, they then insisted, as they do now, that the facts here present a far stronger case for their proposition that the state law is controlling, pointing out that the Indiana statute was *not* part of a state "Right-to-Work" law and that therefore § 14(b) of the Federal law was inapplicable. SeaPak argues that the Georgia statute (which was in effect before the Taft-Hartley Act was enacted) is part of a state policy to regulate compulsory unionism as expressly sanctioned by Congress under § 14(b).[5] Counsel vigorously maintain that employees who execute authorizations revocable only after one year but who within twelve months revoke same become forced members of the union. The employee's choice is either that of continued, compulsory "membership" in the union or of termination of employment. So they argue and the argument has some force. The obligation to pay regular dues to a labor organization which an employee is not required to join is the practical equivalent of an agreement requiring membership as a condition of employment. Retail Clerks Local 1625 v. Schermerhorn, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678. See also, N.L.R.B. v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670.

Perhaps this Federal-State conflict could be avoided by me on the theory that the three employees of SeaPak involved here signed deduction authorizations conforming to the Federal one year irrevocable checkoff requirement. If I did, however, I would be right back where we started since Georgia Code § 54–907 declares any checkoff agreement "unlawful" unless revocable at the will of the employee. I am inevitably confronted by the question of whether there is a Federal preemption of checkoff authorizations and whether § 14(b) in prohibiting agreements requiring union membership as a condition of employment permits a state to enact check-

---

3. This decision represented a complete volte-face by Judge Noland. He had ruled two months earlier in the same case that Section 302 "does not evidence a congressional intention of completely preempting the area of checkoffs." The first opinion stated: "The one year provision of 29 U.S.C. § 186 is merely a part of a qualification of an exception to a general policy against employers paying money to unions." 70 LRRM 2790 f. Similarly, SeaPak argues that Section 302(c) (4) is "merely a permissive section in what is otherwise a prohibiting section of the Act; it gives no positive rights whatsoever."

4. In a dissenting opinion it was contended that Congress intended, under § 186(c) (4), to "project the Federal Act on the 'dues field' only to the extent of requiring a revocable assignment." See 233 P.2d 698.

5. Georgia Code § 54–904 declares void as against the State's public policy any contract requiring "as a condition of employment" that an individual be a member of a union or pay any fee or money to a labor organization.

off provisions contrary to what is provided for in § 302 of the Federal Labor-Management Relations Act.

Seeking to read the legislative mind, sometimes difficult, counsel have explored at length the history of the Labor-Management Relations Act of 1947. While inconclusive, it is not without value. The background of that statute and the Senate debate as reported in the Congressional Record on May 8, 1947, reveal deep concern about checkoffs and the period during which they may be irrevocable. Congress "was not indifferent to that subject, but on the contrary, was so vitally interested therein, that it established certain conditions precedent which an employer must meet before he may 'check-off' membership dues." State of Utah v. Montgomery Ward & Co., *supra*.

■ Section 302 (29 U.S.C. § 186) makes it unlawful for any employer to pay money to a labor organization, including deduction from wages of dues unless there is a written assignment from the employee "which shall not be irrevocable for a period of more than one year * * *." A union is thus permitted to bargain for and receive a checkoff of dues under authorizations which may be irrevocable for as long as one year. Under the Georgia "Right-to-Work" law any such authorization is revocable at the will of employee and is invalid if it is irrevocable for *any* period.

The two statutory provisions are completely at odds. One or the other must give way. They cannot co-exist. I think the state regulation must yield. The area of checkoff of union dues has been federally occupied to such an extent under § 301 that no room remains for state regulation in the same field. According to the legislative history of the Labor-Management Relations Act of 1947, the bill as reported out and as it originally was approved by the House declared that it was an unfair labor practice for an employer to assist a union "through deducting from the wages of any employee dues * * * payable by the employee to a labor organization * * * unless such action has been voluntarily authorized in writing by such employee and such authorization is revocable by the employee at any time upon thirty days written notice to the employer." There was a Senate amendment, which later became § 302(c) (4), declaring any such payment by an employer "unlawful" in the absence of written authorization by an employee and irrevocable for not longer than one year. Suppose that the Labor-Management Relations Act had embodied the original House version of the checkoff restriction. Would not the 30-day notice provision have amounted to a clear Congressional mandate governing deduction of union dues in *every* state? I cannot be persuaded that Federal preemption fails merely because Congress saw fit to adopt a less liberal power of revocation and then incorporated it in a proviso.

■ The intent certainly cannot be attributed to the National Legislature of reserving to states the power to enact regulations in direct conflict with specific legislation by Congress on the same subject. That body was aware that "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." Local 174 Teamsters v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 577.

Congress acted with considered purpose in limiting the period of irrevocability to not more than a year. Senator Taft remarked in debate that such was a customary provision in labor agreements. Conceivably, Congress thought that a period of a year would better protect the union's position from deterioration through revocation of checkoff authorizations.

I am confident Congress did not conceive that checkoff of dues for a limited time after an employee's revocation of

authorization therefor would amount to compulsory union membership as interdicted by state "Right-to-Work" laws. Nor do I think that when Congressman Hartley stated that state laws prohibiting the right of an employer to require employees to become "or remain" members of a labor organization would be valid notwithstanding the Federal Act, he conceived that the checkoff revocation in the Labor-Management Relations Act derogated against the powers of states under 14(b).

 After all, state prohibition of compulsory unionism is a Congressional dispensation of grace, not the imperious right of a state. I do not agree that the one year irrevocability provision in the Act can be varied by a state legislature under the reservation to the states of the power to prohibit "agreements requiring membership in a labor organization as a condition of employment." Section 14(b) says that and no more and it reaches no further. Preemption of the field of checkoff regulation by Title 29 § 186(c) (4) leaves unimpaired the right of any state to prohibit union or closed shops. Section 14(b) contemplates state regulation only as to forms of union security which are "the practical equivalent of compulsory unionism." NLRB v. Houston Chap. Associated General Contractors of America, Inc., 349 F.2d 449 (5th Cir.), cert. den'd. 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540. Checkoff authorizations irrevocable for one year after date do not amount to compulsory unionism as to employees who wish to withdraw from membership prior to that time.

The motion of National Maritime Union for summary judgment is therefore granted. That of SeaPak is denied. In the New York action NMU prays for an injunction. I do not see where one is necessary. The "other relief" prayed for is broad enough to include a declaration of rights. Counsel may submit a proposed form of judgment, including reimbursement of the dues which SeaPak failed to deduct and remit to the Union.