**MONROE LODGE NO. 770, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO**

v.

**LITTON BUSINESS SYSTEMS, INC.**

Civ. A. No. 68–C–121–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Sept. 24, 1971.

 

A. A. Campbell, Campbell & Campbell, Wytheville, Va., for plaintiff.

Waldo G. Miles, Woodward, Miles & Flannagan, Bristol, Va., for defendant.

### OPINION and JUDGMENT

DALTON, District Judge.

The court by tentative views rendered August 27, 1971 outlined its decision in this case. Since that date, counsel have submitted further memoranda (filed September 1, 1971) urging their respective positions on the issues involved. Upon mature consideration it is adjudged and decided as follows:

The plaintiff in the case at bar is an unincorporated labor organization which seeks relief from this court for the defendant's alleged breach of the collective bargaining agreement entered between the plaintiff (hereinafter referred to as the Union) and Monroe International, Inc., Bristol Division on April 27, 1967. The corporate name of Monroe International was subsequently changed to Litton Business Systems, Inc. when Monroe became a division thereof. This dispute centers around Litton's (hereinafter the Company's) failure to deduct union dues from the wages of employees who had been members of the Union.

The specific provision of the agreement with which the Union alleges the Company failed to comply is Article 1—Union Security which reads as follows:

Upon receipt, by the Company, of a signed authorization, the Company will deduct the Union initiation or reinstatement fees and monthly dues from the pay of each of its employees who have or who may hereafter authorize such deductions. The sum so deducted shall be paid monthly to the appropriate financial officer of the Union, together with an itemized statement showing the source of each deduction.

All authorized deductions shall be effective and irrevocable for a period of one year or to the termination of

the Agreement, which ever occurs sooner.

This authorization shall continue in full force and effect for yearly periods beyond the irrevocable period set forth above, and each subsequent yearly period shall be similarly irrevocable unless revoked within fifteen (15) days after an irrevocable period hereof. Such revocations shall be effective by Registered written notice to both Company and the Union within such fifteen (15) day period.

The employees whose dues had not been deducted had executed written authorizations as prescribed by the union security article given above. The content of this form is as follows:

### VOLUNTARY CHECKOFF AUTHORIZATION AND ASSIGNMENT

Name _____ Clock No. _____ Dept. _____

I hereby authorize _____ to deduct each month from my wages on account of membership dues in Lodge No. _____ of the International Association of Machinists. I further authorize the Company to deduct from my wage to the amount of union initiation fee, reinstatement fee and/or assessments when notified in writing to do so by the Financial Secretary of the Union.

The sums thus to be deducted are hereby assigned by me to Lodge No. _____ of the International Association of Machinists and are to be remitted by the Company to the Financial Secretary of the Union.

From time to time the Financial Secretary of the Union will notify the employer as to the amount of the Local Lodge's initiation and reinstatement fees and the amount of the Local Lodge's monthly dues.

I submit this authorization and assignment with the understanding that it will be effective irrevocable for a period of one year from this date, or up to the termination date of the current collective bargaining agreement (if any) between the _____ and Lodge No. _____ of the International Association of Machinists, whichever occurs sooner.

This authorization and assignment shall continue in full force and effect for yearly periods beyond the irrevocable period set for the above and each subsequent yearly period shall be similarly irrevocable unless revoked by me within fifteen (15) days after any irrevocable period hereof. Such revocation shall be effected by written notice to the Employer and the Union within such fifteen (15) day period.

Signature _____ Date _____

During the last few months of the first year and during a great part of the second year of this collective agreement, a large number of employees delivered to the Company written revocations of these authorizations. These notices expressly stated that the employees were resigning from the Union, and that they wanted the Company to discontinue the deduction of union dues from their wages. The apparent reason for these revocations and resignations was the employees' dissatisfaction with an increase in the amount of union dues. The dispute in the case at bar concerns the validity of those revocations which were not made in accordance with the terms of the authorizations and the collective agreement. Of specific concern is the Company's act of honoring those revocations which occurred in the latter part of the first year, and also those which were submitted at different times during the second year after the expiration of the fifteen day period.

Although the collective agreement between the Union and the Company and the employee authorization cards both provided for automatic renewal for a yearly period, if the cards were not revoked within the fifteen day period, the Company honored these revocations and discontinued the dues deductions from the wages of employees who had submitted such revocations.

On September 30, 1968, the Union wrote the Director of Industrial Relations of the Company advising that it felt that the Company was violating the terms of the labor contract by failing to comply with Article I thereof, which the Union asserted required the Company to continue the deductions. On October 3, 1968, the Company replied that it would refuse to respect the labor contract in regard to Article I. On October 14, 1968, the Union, by its president, submitted a grievance to the Company concerning the alleged violation of the collective agreement. The Company refused to answer the grievance on the ground that it did not feel that the matter was of a grievable nature. Thereafter the business representative of the Union wrote to the Company requesting that the grievance be submitted to arbitration pursuant to Article XII of the labor agreement. In November of that year, the Company declined to comply with the request for arbitration. Following this denial, the Union instituted this action praying that the Company be required to comply with the provisions of the labor agreement which provided for arbitration; or, in the alternative, that the Company be required to pay the amounts which should have been deducted plus interest from the date such deductions should have been made.

The Company contends that it was correct in refusing to honor Article I of the agreement calling for the checkoff of dues on the ground that the Article was void under Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186. It is the position of the Company that had it continued to deduct the dues from the employees' wages after the receipt of the revocations, it would have been subject to criminal prosecution under Section 302(d) of the Act, 29 U.S.C. § 186(d).

While Section 302 of the Act prohibits the payment of money by any employer to a labor organization, it includes several exceptions which allow certain types of payments to be made under some circumstances. The exception which is pertinent to the case at bar is codified in Section 302(c), 29 U.S.C. § 186(c), which provides:

> The provisions of this section shall not be applicable * * *; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; * * *

The Company takes the position that the authorization cards were valid for a period of one year only, and that the automatic renewal provisions included in the authorization forms and the collective agreement were void because they violated the provisions of the above section. Therefore the Company contends that all revocations which were submitted after the expiration of one year were valid and that it was correct in honoring these revocations.

This court has jurisdiction over this matter pursuant to the provisions of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), since it involves an alleged violation of a contract between an employer and a labor organization. Furthermore, it has been specifically held that the alleged failure to checkoff dues is a matter of direct and peculiar concern of a labor organization and is within the jurisdiction of the federal courts. United Mine Workers of America, District 22 v. Roncco, 314 F.2d 186 (10th Cir. 1963); United Electrical, Radio and Machine Workers of America (UE), Local 107 v. Westinghouse Electric Corp., 229 F. Supp. 881 (E.D.Pa.1964); United Steelworkers of America, AFL–CIO v. Knoxville Iron Company, 162 F.Supp. 366 (E. D.Tenn.1958).

The evidence in the case at bar reveals that there were several employees

who submitted their revocations before the expiration of the first year. There can be no doubt that the Company was wrong in honoring these revocations, and therefore, the Union is entitled to relief with respect to Company's failure to continue deductions from the wages of these employees.

On the other hand, the effectiveness of the revocations which were submitted during the second year, after the fifteen day period had expired, is the major issue in this case and presents a more difficult question. In deciding this case, it is first necessary to determine the strength of the Company's reliance on Section 302 as a defense to the Union's present claim. As stated above, the Company is of the opinion that had it continued the dues checkoffs after the receipt of the revocations, it would have been subject to the criminal liability imposed for paying money to a labor organization.

■ The prohibitions set forth in Section 302 of the Act are directed to employers and union representatives and are intended to prevent bribes, extortion, and other corrupt dealings between the two. Crajczyk v. Douglas Aircraft Co., 210 F.Supp. 702, 705 (S.D.Cal. 1962). The exceptions enumerated in subsection (c) of Section 302 were enacted to allow certain types of payments from employers to unions without worry of prosecution. This court, in interpreting the section, finds dual significance in the requirement that a written assignment be executed by each employee from whose wages dues are to be deducted. First, these written assignments serve to facilitate the employer by affording him a document by which to substantiate payments made under this section. Secondly, the language of the written assignment requirement of this subsection suggests that employees have a choice between checkoff and direct, personal payment of their dues. *See* Brotherhood of Locomotive Firemen and Enginemen v. Northern Pacific Ry., 274 F.2d 641, 655 (8th Cir. 1960). This voluntary aspect of the provision is of particular importance to this court in determining the interpretation to be given to the one year irrevocability provision of this section.

The legislative history of this section reveals that the section, as approved by the House, provided that authorizations for dues deductions would be "revocable by the employee at any time upon *thirty days written notice to the employer.*" SeaPak v. Industrial, Technical and Professional Employees, Division of National Maritime Union, AFL–CIO, 300 F.Supp. 1197, 1200 (S.D.Ga.1969), aff'd 400 U.S. 985, 91 S.Ct. 452, 27 L. Ed.2d 434 (1971). However, the Senate amended the section to read as it presently does with the one year time period for irrevocability. It was thought that a period of one year would better protect the union's position from deterioration through revocation of checkoff authorizations. *See SeaPak, supra,* at 1200. Congress could have elected to allow these checkoff authorizations to be irrevocable for the effective period of the collective agreement, but it did not. Instead, Congress seems to have chosen to assure that an individual would have an opportunity to change his mind about how he wishes to pay his union dues after one year. The automatic renewal provisions contained in the assignment forms in the case at bar do not deny an employee that right.

■■ In light of the fact that the provisions in section 302(c) (4), 29 U.S. C. § 186(c) (4), do not make it mandatory for an employee to execute a dues deduction authorization, but merely allow such checkoff arrangements if the employee elects to pay his dues in such a manner, this court is of the opinion that the one year irrevocability provision in the act does not preclude an arrangement such as the one involved in this dispute, in which there is a fifteen day escape period followed by automatic renewal for another year. At no time were the authorizations irrevocable for more than a one year period.

It appears to this court that the primary purpose of this section was to pre-

vent unauthorized deductions from employees' wages and to prevent subsequent unauthorized payments of such amounts by the employer to the union. In this regard, this court feels that the assignments in the case at bar were valid, and the Company could have continued to deduct and pay over dues to the Union in accordance with the contract without subjecting itself to criminal prosecution under Section 302.

In 1948, the Justice Department, the agency of our government with the responsibility of prosecuting under this section, issued an opinion in response to an inquiry as to the validity of a check-off arrangement almost identical to the one in the case at bar. In that opinion, the Department took the position that while the validity of such an arrangement was a matter for judicial determination, it did not feel such an arrangement was violative of the law and would not prosecute a case arising pursuant to such an arrangement. Justice Department Opinion on Checkoff of May 13, 1948, 22 L.R.R.M. 46 (1948). Arbitrators faced with the problem have relied on this opinion and found that such arrangements are valid and should be performed when bargained for in a collective agreement. *E. g.*, Eugene Rothmund Co. v. United Packinghouse Workers of America, Local 11, (CIO), 14 Lab.Arb. 676 (1950) (Copelof, Arbitrator).

This court agrees with the opinion of the Justice Department that such an arrangement is not violative of Section 302, and therefore, holds that the Company's defense in the case at bar is without merit.

It is next necessary to decide whether the employees who revoked their authorizations and resigned from the Union remained obligated to pay dues when they failed to submit their revocations as prescribed in the authorization cards. If they were not so obligated, the Union's claim for recovery of damages for the Company's failure to deduct these amounts must be denied.

In the case of Murtha v. Pet Dairy Products Co., 44 Tenn.App. 460, 314 S.W.2d 185 (Ct.App.1957), 252 employees had revoked their authorization cards and resigned from the union. The union claimed that the company had breached the collective agreement by honoring these revocations. Due to the fact that 234 of these revocations were made during a period of time between the expiration date of a prior collective agreement and the execution date of the new labor contract, the court felt that these authorizations were revocable at will because notice was required at least 60 days and not more than 75 days before the contract renewal date which was undeterminable in that case. However, the court in *Murtha* stated;

> Had these employees waited until after the new two-year contract was signed on October 27th, as did the remaining 18 employees, their attempt to revoke their authorizations for the irrevocable period of 'one year' would have been ineffective. 314 S.W.2d at 190.

As to the remaining eighteen employees who revoked their authorizations after the new contract had been executed, the court held that these revocations were ineffective, and the company was under a contractual duty to comply with the provisions of the collective agreement for the effective period of the authorizations. 314 S.W.2d at 190. While in *Murtha* the revocations occurred during the first year of the new contract, it is the opinion of this court that the same result is reached when the revocations occur during the second yearly period of irrevocability. Under basic contract principles the effect of the renewal provision in the authorization cards, which were voluntarily executed by employees who had chosen to pay their dues in this manner, is to bind the employee to an obligation of one year's union dues.

In *SeaPak, supra,* the District Court held that the area of checkoff of union dues has been federally occupied to such an extent that no room remains for state

regulation in the same field. Conceivably, the decision in *SeaPak* ended the dispute which had arisen between Section 302 and the state "right to work" laws with the regard to the deduction of union dues. In *SeaPak*, which was summarily affirmed by the Supreme Court, 400 U.S. 985, 91 S.Ct. 452, 27 L.Ed.2d 434 (1971), the district court held:

> Checkoff authorizations irrevocable for one year after date do not amount to compulsory unionism as to employees who wish to withdraw from membership prior to that time. 300 F. Supp. at 1201.

The judgment entered in *SeaPak* ordered the reimbursement of dues which the company had failed to deduct and remit to the union.

Another case which this court feels is of significance is International Brotherhood of Operative Potters, AFL–CIO v. Tell City Chair Co., 295 F.Supp. 961 (S.D.Ind.1968). In that case, the defendant company had checked off dues of all employees who had submitted authorizations until certain employees revoked their authorizations before the expiration of one year or the termination of the collective agreement. The company thereafter refused to checkoff the dues of employees who had revoked their authorizations. The union sought a declaratory judgment that the company had failed to comply with the labor contract by honoring these revocations. The company asserted that the Indiana anti-wage assignment statute which provided that such assignments were revocable at will controlled, and that it was bound by that statute to honor the revocations. The district court held that Section 302 of the Labor Management Relations Act controlled, and that since the Indiana statute was inconsistent, it could have no application. The court thereafter declared that the company was in violation of the collective agreement.

In the case at bar, this court can see no reason why a revocation during the second one-year period of irrevocability should be treated different from one occurring in the first year. The employees had voluntarily executed a form which provided that it was irrevocable for one year after which revocation could be made within fifteen days, and if not, then the authorization was renewed for another year. When an employee did not revoke within the prescribed period, he, in effect, obligated himself to the payment of union dues for another year subject to the same revocation provisions which were applicable during the first yearly period. Had the employee re-executed a new authorization for the second year, it would have been irrevocable, and the employee would have been bound for the payment of dues even if he decided to resign from the union during that year. This court finds no reason why authorizations pursuant to a renewal provision in the original form signed by the employee should be treated differently.

For the above reasons this court finds that the employees were obligated for dues during the second yearly period, and were bound by the same revocation provisions as were applicable in the first year. Furthermore, since these employees would have been bound, the Company was obligated to continue the dues deductions and its failure to do so amounted to a breach of the collective bargaining agreement.

In light of this breach, the Union is entitled to reimbursement for dues which the Company failed to deduct and remit to the Union. *SeaPak, supra,* 300 F. Supp. at 1201. However, this court does not agree with the Union as to the amount of dues to which it is entitled. The Union asserts that it is entitled to dues from the time the Company stopped deducting such dues from employees wages until January of 1970 when the Company closed its plant in Bristol.

■ This court is of the opinion and so holds that while the revocations were ineffective to authorize the cessation of deductions during the second yearly period, they were effective to authorize the Company to cease the deductions at the

end of that period. In other words, revocations which were submitted during the year gave the Company and the Union notice of the employees' desire to discontinue the deductions, and it was unnecessary for the employees to re-submit revocations during the fifteen day period at the end of the second year. *See* Felter v. Southern Pacific Co., 359 U.S. 326, 335, 79 S.Ct. 847, 3 L.Ed. 2d 854 (1959).

■ Because of the difficulty in de-ciding the exact amount of money due to the Union in this case, the court directs that the Union and the Company shall by joint action compute the actual mone-tary amounts to which the Union is entitled. In doing so the court directs that such computation be made within the following guidelines.

First, the parties shall classify the employees into groups based on when their revocations were submitted. Ex-amination of the exhibits submitted in this case reveals that some employees revoked before the expiration of the first period of irrevocability. As to them the Union is entitled to any dues not withheld during the remainder of that year since these revocations were ef-fective at the end of that period.

The parties shall also determine the number of employees whose names ap-pear in the exhibits who revoked within the fifteen day period at the end of the first year. As to these employees the Union is obviously not entitled to re-cover.

Finally, the parties shall determine the number of employees whose revocations were submitted during the second period of irrevocability. As to these employees the parties shall further determine the number of months for which union dues were owed taking into account sick leave, lay-offs, terminations, transfers to sal-arises, and rejoining the union. Once this determination is made, the true amount due from each employee can be computed by multiplying the number of months by the monthly rate of union dues for which each employee was ob-ligated.

The court hereby enters judgment for the plaintiff, and after due consideration does, within its discretion, order that the Union shall be entitled to the principal amount so computed by the parties with no allowance for interest. Furthermore, the court directs each party to bear its respective costs attributed to this matter.