AMALGAMATED MEAT CUTTERS AND ALLIED WORKERS OF NORTH AMERICA, LOCAL NO. 593,

v.

SHEN–MAR FOOD PRODUCTS, INC.

Civ. A. No. 75–0030–H.

United States District Court,
W. D. Virginia.

Oct. 14, 1975.

Robert E. Paul, Spelman, Eisenberg & Wagner, Arlington, Va., for plaintiff.

George V. Gardner, Gardner & Ambrister, Washington, D. C., and William A. Julias, Harrisonburg, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

This labor dispute arises pursuant to § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185. Plaintiff is a labor organization and the collective bargaining representative for defendant's production and maintenance employees and truck drivers. Defendant is engaged in the food processing business in Bridgewater, Virginia. Plaintiff seeks damages, injunctive and declaratory relief and reasonable counsel fees and costs of this action. The parties have agreed on the material facts and plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff and defendant have been privy to a series of collective bargaining agreements, the most recent of which is effective from March 12, 1975 through March 12, 1977. A contract preceding this time period was in effect from March 13, 1972 to March 11, 1975. Plaintiff alleges that Shen-Mar has breached in each case Article II of these successive contracts by failing to check off from the pay of its employees regular monthly union dues and initiation fees. Article II of the agreement, which is identical for both the preceding and the current contract provides as follows:

SECTION 1: The Company agrees to check off from the pay of its em-

ployees, who are members of the Union, the regular monthly dues and initiation fees and to pay such monies collected over to the proper officers of the Union.

SECTION 2: The Union agrees to furnish to the company, individual dues deduction authorization slips voluntarily signed by its employees for the purpose of this checkoff.

SECTION 3: The Union will indemnify and save harmless the Company from any and all claims and disputes by reason of the Company's acting in reliance upon the voluntary assignments furnished it.

SECTION 4: The Company shall once each month furnish a list to the Union showing all newly hired employees who have passed the trial period, or who were laid off or discharged.[1]

Pursuant to § 302(c)(4) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(4), certain employees of defendant executed check-off authorization cards. Other than the card executed by employee Hattie Stoutamyer, these cards contain the following identical language:

I hereby authorize the Amalgamated Meat Cutters & Allied Workers of North America, AFL–CIO, Local Union No. 593, herein called the Union, to bargain collectively with my Employer, named below, in my behalf.

I hereby authorize my Employer to deduct from my earnings and pay over to , Local 593 those Union initiation fees and dues that may now or hereafter be established by said local.

This authorization is irrevocable for a period of one (1) year from the execution hereof, or until the termination date of the applicable collective bargaining agreement, whichever occurs sooner, and shall be automatically renewed for successive periods of one (1) year or for the period of each succeeding applicable collective bargaining agreement, whichever period shall be shorter, unless written notice of its revocation by registered mail to the Employer and to the Union is given by me not more than twenty (20) days and not less than ten (10) days prior to any such renewal date.

The card executed by Hattie Stoutamyer provides as follows:

I hereby authorize the Amalgamated Meat Cutters & Allied Workmen of North America, AFL–CIO, Local Union No. 593, herein called the Union, to bargain collectively with my Employer, named below, in my behalf.

I hereby authorize my present or any future Employer to deduct from my earnings and pay over to Local 593 those Union initiation fees and dues that may now or hereafter be established by said local.

This authorization is irrevocable for a period of one (1) year from the execution hereof and shall be automatically renewed for successive periods of one (1) year, unless written notice by registered mail to the Employer and to the Union is given by me, not more than twenty (20) days and not less than ten (10) days prior to any such renewal date.

The names of all of these workers and the various dates during which each one could permissibly revoke his authorization as allowed in its stated terms are agreed upon by the parties and set out in a schedule submitted to this Court. Despite these restrictions on revocability of the checkoff authorizations, in notices dated March 11, 1975, all of these employees except for Linda Gooden informed defendant that they no longer wished to be represented by the union. Gooden mailed her notice to the defendant on March 14, 1975. Relying upon these notices, defendant ceased checking off the dues of these employees beginning on March 13, 1975, and continuing to the present. Plaintiff alleges that

---

1. Neither the preceding or the current collective bargaining agreement contain a union security clause, that is, a provision under which an employee is required to join or maintain membership in a labor organization as a condition of employment.

this is a violation of the collective bargaining agreement and therefore is entitled to its requested relief.

## I

At the outset, this Court is faced with problems of jurisdiction and choice of law. Defendant has asserted that this Court ought to abstain from a decision in this case pending a decision from the National Labor Relations Board which will decide whether or not the defendant has committed a violation of § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). Defendant admits that there often is concurrent jurisdiction between the district courts and the board, but asserts that where the case is actually pending before the board there is greater reason for the Federal Court abstaining.

The problem of pre-emption by the National Labor Relations Board of certain disputes concerning labor management relations is a subject which has produced a tremendous amount of literature. The evolution of this dispute began when the Supreme Court established the general principle in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) that the National Labor Relations Act pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act. However, because of harsh consequences of the *Garmon* holding, there has been a gradual erosion of the principle. *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Smith v. Evening News Assoc.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *VACA v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In *Smith,* supra, an employee brought suit in a state court against his employer, seeking damages for breach of a collective bargaining contract between his union and the employer. He charged that his employer had breached this contract by practicing discrimination against employees because of his membership or activity in the union. Even though it was

conceded that such conduct would violate § 8 of the National Labor Relations Act, the Supreme Court held that § 301 of the Act entitled the state court to proceed absent serious problems arising from both the court and the Board entertaining dual jurisdiction.

In *Sipes,* the court undertook to examine the rationale that would warrant pre-emption. It found that the pre-emption doctrine has not been rigidly applied in instances where it could not be fairly inferred that Congress intended exclusive jurisdiction to lie with the NLRB. *Sipes,* supra at 179, 87 S.Ct. 903. One such instance the court noted is suits for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the Board. In *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1970), the court reaffirmed its intention to permit a judicial exercise of power in this area where Congress has indicated a desire to pay the price of concurrent jurisdiction. See also *Come, Federal Pre-emption of Labor-Management Relations: Current Problems in the Application of Garmon,* 56 Va.L.Rev. 1435 (1970).

■ The Federal labor laws seek to promote industrial peace and the improvement of wages and working conditions by fostering a system of employee organization and collective bargaining. To strengthen collective bargaining Congress chose to give labor organizations or those seeking relief against labor organizations a federal court remedy in addition to the administrative remedy it also set up. By resolving such disputes expeditiously at the federal judicial level, the unique interest of stability in labor management disputes is served. Federal courts have heard similar suits involving allegations of breach of collective bargaining agreements. *SeaPak v. Industrial, Technical and Professional Employees of National Maritime Union,* 300 F.Supp. 1197 (S.D.Ga.1969), aff'd, 423 F.2d 1229 (5th Cir. 1970), aff'd 400 U.S. 985, 91 S.Ct. 452, 27 L.Ed.2d 434

(1971).[2]  This Court sees no distinction in a case pending before the National Labor Relations Board and one that ought to be brought before the Board and surely will result in a finding of an unfair labor practice if it is brought.  It is not the impending result of the Administrative decision that calls for abstention. Abstention is a doctrine concerning the need for uniformity as balanced against the unique interests of a concurrent exercise of jurisdiction.  In cases of labor-management disputes, courts have opted for the latter alternative and this Court finds no compelling reason not to follow this direction.

■ Defendant's second assertion is that Virginia's right to work law ought to apply in this case and that a one-year irrevocable check-off authorization is void under this law.  This Court feels that *SeaPak*, supra, sufficiently settled this issue when it held that the one-year irrevocability provision for check-off authorizations in 29 U.S.C. § 186(c)(4) cannot be varied by state law though states reserved powers in 29 U.S.C. § 164(b) which allows states to prohibit agreements requiring membership in a labor organization as a condition of employment.  This being so, the court thus turns to the merits of this case.

## II

There are forty-three employees of Shen-Mar involved in this dispute.  Between June 4, 1970 and March 4, 1975, at various dates, each employee signed a check-off authorization card.  Under the terms of these agreements, the authorizations were irrevocable for a one-year period from the time which each employee signed the card to the following year or for the period of time to when the collective bargaining agreement ended if this was shorter.  However, this irrevocability period renewed itself automatically unless the employee revoked his authorization between ten and twenty days before the two times he could terminate his authorization.

■ For example, for employee Milton E. Johnsen, who executed his authorization on September 12, 1974, there were two times during which he could revoke this agreement.  They were February 19, 1975 to March 1, 1975, ten days before a new collective bargaining agreement took effect, and August 23, 1975 to September 2, 1975.  However, employee Johnsen, as did all the other employees except Linda Gooden, chose to revoke on March 11, 1975.  Gooden followed suit on March 14, 1975.  It is clear to this Court that all of these revocations were ineffective and the Company should have continued to deduct and pay over dues to the union in accordance with Article II of its collective bargaining agreement. *Monroe Lodge No. 770, International Association of Machinists and Aerospace Workers, AFL–CIO v. Litton Business Systems, Inc.*, 334 F.Supp. 310 (W.D.Va. 1971), aff'd per curiam # 71–2063 (4th Cir. 1972).  Accordingly, this Court grants summary judgment for the plaintiff and relief in the following manner:

1.  Defendant is hereby ordered to pay to plaintiff a sum of money equalling the total union dues defendant should have been deducting for these forty-three employees since the dates of their ineffective terminations.

2.  Since it is apparent these employees wish to revoke their union representation, defendant need only pay those union dues from March 13, 1975, (the date when Shen-Mar ceased checking off union dues) to the end of the year period when each employee could make a valid revocation.  For example, for employee Mary Loan who executed her authorization card on July 21, 1972 and attempted to revoke it on March 11, 1975, Shen-Mar must pay dues it failed to check off from March 13, 1975 until July 21, 1975.  For employee Debra Yount, who executed her card on February 23, 1972

2.  The affirmance by the Circuit Court was per curiam, adopting the opinion of the District Court, and the affirmance by the Supreme Court was without opinion.

and attempted to revoke it on March 11, 1975, Shen-Mar must pay union dues it failed to check off from March 13, 1975 to the present and is herein ordered to begin deducting union dues from Yount's salary until February 23, 1976. The parties involved are herein ordered to compute the exact amount of money involved under these guidelines. Should disagreement result, this Court will resolve such disputes.

3. If the exact date in September, 1974, when employee Toliver signed her card cannot be located, then Shen-Mar is ordered to pay her union dues up to September 1, 1975.

4. The Union is entitled to the principal amount so computed by the parties with no interest. Each party is to bear its own respective costs.