NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SHEN–MAR FOOD PRODUCTS, INC., Respondent.

Amalgamated Meat Cutters and Allied Workers of North America, AFL–CIO, Intervenor.

No. 76–1519.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1976.

Decided June 13, 1977.

Ruth E. Peters, Atty., N.L.R.B., Washington, D.C. (John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Coun-

sel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Aileen A. Armstrong, Atty., N.L.R.B., Washington, D.C., on brief), for petitioner.

Robert E. Paul, Arlington, Va. (Spelman, Eisenberg & Wagner, Arlington, Va., on brief), for intervenor.

Asa Ambrister, Washington, D.C. (George V. Gardner, Gardner & Ambrister, Washington, D.C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

This case is before the court upon the application of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 151, et seq., for enforcement of its order issued against Shen-Mar Food Products, Inc. The Board found that Shen-Mar had violated Section 8(a)(5) and (1) of the Act by failing and refusing to deduct and remit Union dues in violation of the collective bargaining agreement between the parties. The order of the Board requires Shen-Mar to honor the check-off provisions of the agreement and to remit to the Union the dues which should have been checked off, together with interest at six per cent per annum.

■ The facts are undisputed. The Union is the collective bargaining representative for the production and maintenance employees at Shen-Mar's food processing operation in Bridgewater, Virginia. The Union and Shen-Mar are parties to the collective bargaining agreement, Article II of which reads as follows:

SECTION 1: The Company agrees to check off from the pay of its employees, who are members of the Union, the regular monthly dues and initiation fees and to pay such monies collected over to the proper officers of the Union.

SECTION 2: The Union agrees to furnish to the Company, individual dues deduction authorization slips voluntarily signed by the employees for the purpose of this checkoff.

SECTION 3: The Union will indemnify and save harmless the Company from any and all claims and disputes by reason of the Company's acting in reliance upon the voluntary assignments furnished it.

SECTION 4: The Company shall once each month furnish a list to the Union showing all newly hired employees who have passed the trial period, or who were laid off or discharged.

During the period from September 1973 to October 1974, nine employees wrote to the Union and Shen-Mar, stating that they wished to withdraw from Union membership. Each of the nine employees had signed a dues check-off authorization card, all but two of which stated:

I hereby authorize the Amalgamated Meat Cutters & Allied Workers of North America, AFL–CIO, Local Union No. 593, herein called the Union, to bargain collectively with my Employer, named below, in my behalf.

I hereby authorize my Employer to deduct from my earnings and pay over to Local 593 those Union initiation fees and dues that may now or hereafter be established by said local.

This authorization is irrevocable for a period of one (1) year from the execution hereof, or until the termination date of the applicable collective bargaining agreement, whichever occurs sooner, and shall be automatically renewed for successive periods of one (1) year or for the period of each succeeding applicable collective bargaining agreement, whichever period shall be shorter, unless written notice of its revocation by registered mail to the Employer and to the Union is given by me not more than twenty (20) days and not less than ten (10) days prior to any such renewal date.

The language of the remaining two check-off authorization cards differed from the foregoing only in minor respects. Although only two of the employees had specifically requested that Union dues no longer be deducted from their wages, Shen-Mar

ceased checking off dues for all nine employees.

■ In the proceeding before the Board Shen-Mar contended that the contractual dues check-off provision is a form of Union security arrangement which is proscribed by the Virginia right-to-work law enacted pursuant to Section 14(b) of the Act. The Board rejected Shen-Mar's contention, holding that the check-off provision was not a Union security device which would be subject to State law under Section 14(b). While Shen-Mar has not specifically pressed this point before us, we think it appropriate to note that the Board's holding is well supported. *N.L.R.B. v. Atlanta Printing Specialities and Paper Products Union,* 523 F.2d 783 (5 Cir. 1975); *SeaPAK v. Industrial Employees Div. of National Maritime Union,* 300 F.Supp. 1197 (S.D.Ga.1969); *aff'd per curiam,* 423 F.2d 1229 (5 Cir. 1970), *aff'd,* 400 U.S. 985, 91 S.Ct. 452, 27 L.Ed.2d 434 (1971).

Shen-Mar argues here, as it did before the Board, that Article II of the agreement required Shen-Mar to check off dues from only those employees "who are members of the Union," and that the notifications of the withdrawal from Union membership terminated Shen-Mar's obligation to check off any dues thereafter. The Board, however, concluded that Article II of the agreement incorporated by reference the voluntary check-off authorizations and that, accordingly, a revocation of the dues check-off could be effected only in conformity with the provisions of the authorization form.

■ The requirements for a valid dues check-off are found in Section 302(c)(4) of the Labor Management Relations Act, 1947, 29 U.S.C. § 186(c)(4) which permits the employer to withhold and remit dues to a Union provided:

the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement whichever occurs sooner * * *.

Clearly, the employee's authorization card is the primary requisite to the validity of any arrangement under the statute, and the Board's conclusion that the authorization card and Article II of the agreement should be read together is consonant with the statutory pattern. The authorization cards used in the present case tracked the statutory language with respect to revocation, and we agree with the Board that to read Article II in isolation would reach a result that "is so contrary to labor relations experience that it should not be inferred in the absence of unambiguous contract language to that effect or a history of negotiations demonstrating that fact."

■ Finally, Shen-Mar asks that we clarify or modify certain remedial aspects of the Board's order. First, Shen-Mar suggests that the order is unclear as to whether it must pay the dues for the named employees or merely deduct such accumulated dues from the earnings of the employees. We perceive no ambiguity in the Board's order for it is clear that since Shen-Mar failed to carry out its contractual obligation to check off the dues, the order properly requires that it pay the accumulated amount directly to the Union, together with interest thereon.[1]

■ We do agree with Shen-Mar that some modification of the order is necessary with respect to the period for which Union dues should be paid. This same contractual provision was involved in a Section 301 action in *Amalgamated Meat Cutters v. Shen-Mar Food Pro.,* 405 F.Supp. 1122 (W.D.Va. 1975). In that case the district court reached the same conclusion as the Board with respect to the revocation provisions, but the court further held that since it was apparent that the employees wished to re-

---

1. The Board's order, of course, deals only with the responsibility of Shen-Mar vis-a-vis the Union and in that posture Shen-Mar is responsible for the unpaid dues. The order does not address itself to the primary responsibility of the individual employees for such dues as between them and their employer.

voke their Union representation, the employer would be required only to check off dues from the date of the notice of termination until the end of the one year period when each employee would be entitled to make a valid revocation. We think that such a limitation would be appropriate in the present case and, accordingly, the order of the Board will be so modified. With this modification, the order of the Board will be enforced.

*ENFORCED AS MODIFIED.*

HAYNSWORTH, Chief Judge, dissenting:

I cannot agree with the conclusion that the employer violated its commitment to the union when it ceased its deduction and transmission of dues from employees who had notified it of their withdrawal from the union.

In Article II, Section 1 of the contract, quoted in the majority opinion, the employer agreed "to check off from the pay of its employees, who are members of the Union, the regular monthly dues and initiation fees * * *." In Section 2, the union agreed to furnish "individual dues deduction authorization slips voluntarily signed by the employees * * *." There was no reference anywhere in the contract to any union representation cards which included initiation fees and dues deduction authorizations with a limited right of revocation.

Nothing in the authorization cards collected by the union in its organizational campaign had any direct legal impact upon the employer, though collectively there may have been a collateral consequence if they established an employer duty to recognize and bargain with the union.

After recognition, when union and employer met at the bargaining table, the employer could have taken any position it wished with respect to the check off of union dues. It could have insistently declined to make any such deductions. If it took that position it would not have invalidated the authorization cards, for the employer had the right to decline to agree to do what the cards purportedly authorized it

to do. It could, of course, have obligated itself to deduct union dues until the authorization was revoked in the manner provided in the union authorization cards, but no language to that effect is to be found in the contract. Since the employer was under no legal obligation to make such a commitment, since it had a right to refuse to make any deductions or to take any intermediate position, we must look to the language actually employed by the contracting parties to determine the extent of the employer's commitment.

In Section 1 of Article II, the company's agreement was to check off "from the pay of its employees, who are members of the Union, the regular monthly dues * * *." It had a perfect right to say, if it wished, that it would deduct the dues of authorizing union members so long as they remained union members, but no longer. And this seems to me clearly the meaning of the clause "who are members of the Union." The clause is not logically descriptive of all employees, and there is no logical explanation for the presence of those words except as a limitation upon the employer's commitment to deduct and remit dues.

This seems to me to be emphasized by Section 2, for the union agreed to furnish "individual dues deduction authorization slips voluntarily signed by the employees * * *." The union authorization cards, actually filed with the company by the union, are commonly referred to as "cards" and not as "slips," and the requirement of Section 2 could have been met by the filing of new slips simply authorizing the employer to deduct the dues of union members so long as they remained union members.

It is incomprehensible to me that, if the contracting parties had existing union authorization cards in mind as the measure of the employer's contractually assumed obligation, they would not have said so and that they would not have included a reference to the limitations upon the rights of revocation as contained in the cards. That they did not strongly suggests to me that they contracted without reference to the

cards. I cannot strain the language actually employed by the parties to be an incorporation by reference of cards so easily described, if that was what the parties had in mind.

Since the employer had the right to limit its check off obligation to the accruing dues of union members, so long as they remained union members and had filed dues deduction authorization slips with it, since the contract language is wholly consistent with that intention, and seems to me not readily susceptible to any other construction, I would deny enforcement of the Board's order.