**GEORGIA STATE AFL-CIO, Truck Drivers & Helpers Local No. 728, United Food and Commercial Workers Local 1996, Plaintiffs,**

v.

**Sam OLENS, Attorney General of the State of Georgia, John Nathan Deal, Governor of the State of Georgia, Defendants.**

**CIVIL ACTION NO. 1:13-cv-03745**

United States District Court, N.D. Georgia, Atlanta Division.

Signed 07/07/2016

James D. Fagan, Jr., Michael Blair Schoenfeld, Stanford & Fagan, LLC, Atlanta, GA, for Plaintiffs.

Britt Cagle Grant, Devon Orland, Office of State Attorney General, Sarah Hawkins Warren, Georgia Department of Law, Atlanta, GA, for Defendants.

## ORDER

William C. O'Kelley, Senior United States District Judge

The above-captioned case is before the court for consideration of defendants Sam Olens and John Nathan Deal's (hereinafter "defendants") motion for judgment on the pleadings [28] and plaintiffs Georgia State AFL-CIO, Truck Drivers & Helpers Local No. 728 ("Local No. 728"), and United Food and Commercial Workers, Local 1996's ("Local 1996") (hereinafter "plaintiffs") motion for summary judgment [41]. The parties have filed responses to the respective motions [32, 44]. The court will begin by briefly recounting the procedural history and facts at issue in the case.

### I. Procedural History and Factual Background

This action was filed on November 12, 2013. The facts are largely undisputed. Plaintiffs mount a facial challenge to revisions of Georgia's right-to-work statute that became effective July 1, 2013. *See* O.C.G.A. §§ 34–6–21 to –28; 2013 Ga. Laws 192; *see also* H.B. 361, 152d Gen. Assemb., Reg. Sess. (Ga. 2013). On March 21, 2014, defendants filed a motion to dismiss. The court granted in part and denied in part defendants' motion. Plaintiffs have since narrowed their claims to challenge only three sections of the statute—3(d), 4, and 5. (*See* Joint Prelim. Report & Disc. Plan 2, ECF No. 27.)

Section 3(d) states that "[n]o employer or labor organization shall be forced to enter into any agreement, contract, understanding, or practice ... that subverts the established process by which employees may make informed and free decisions regarding representation and collective bargaining rights provided for by federal la-

bor laws." O.C.G.A. § 34–6–21(d). Section 4 prohibits an employer from deducting from "wages or other earnings of any employee any fee, assessment, or other sum of money . . . to be paid over to a labor organization except on the written authorization of the employee. *Such authorization may be revoked at any time* at the request of the employee." *Id.* § 34-6-25(a) (emphasis added). Lastly, section 5 makes it unlawful for employers and labor organizations *to contract* for such a deduction from wages (i.e., one not revocable at will). *Id.* § 34-6-26(a).

Plaintiffs allege that these statutory sections are preempted by the National Labor Relations Act, 29 U.S.C. §§ 151-169, as amended by the Labor Management Relations Act, 29 U.S.C. § 141-197 ("NLRA") as the governing federal law and standard under the Supremacy Clause of the United States Constitution. Plaintiffs base their claim on several portions of the NLRA, including Section 302(c)(4) (codified at 29 U.S.C. § 186), which provides *inter alia* that "[i]t shall be unlawful for any employer or association of employers . . . to pay, lend, or deliver . . . any money or other thing of value . . . to any representative of any of his employees who are employed in an industry affecting commerce." 29 U.S.C. § 186(a)(1) (2012). In the same section, the statute lists several exceptions to this general rule. *See id.* § 184(c). Among them, it specifies that

> The provisions of this section shall not be applicable . . . with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided,* That the

employer has received from each employee, on whose account such deductions are made, a written assignment which *shall not be irrevocable for a period of more than one year,* or beyond the termination date of the applicable collective agreement, whichever occurs sooner.

*Id.* § 186(c)(4) (emphasis added). Likewise, plaintiffs assert that O.C.G.A. § 34–6–21(d) is preempted for similarly interfering with NLRA regulation and attempting to exercise authority over an area exclusively regulated by federal law.

Plaintiff Georgia State AFL-CIO is a voluntary unincorporated labor federation affiliated with various labor organizations (e.g., plaintiffs Local No. 728 and Local 1996 in this case).[1] Several of these organizations are currently parties to collective bargaining agreements ("CBAs") that contain provisions governing employer payroll deduction authorizations. In contrast to the Georgia statute, yet consistent with federal law, these provisions make employee checkoff authorizations irrevocable for one year or until the expiration date of the applicable collective bargaining agreement, whichever occurs sooner. This forms the basis of the dispute as it presently stands.

On the theories that plaintiffs (1) have failed to sufficiently plead their allegations of *Garmon* and *Machinist* preemption, (2) have improperly based their 42 U.S.C. § 1983 claim on the Supremacy Clause, and, alternatively, (3) have failed to show that the NLRA grants a federal right sufficient to pursue their § 1983 claim, defendants moved for a judgment on the pleadings on September 8, 2015. After a period

---

1. Plaintiffs identify Local 728, Local 1996, the Bakery Confectionary, Tobacco Works and Grain Millers, Local 42 ("Local 42"), and the International Brotherhood of Electrical Work-ers, Local 613 ("Local 613") as "labor organizations" pursuant to O.C.G.A. § 34–6–20(b) and 29 U.S.C. § 152(5).

for discovery, plaintiffs moved for summary judgment. The court will discuss these two motions in turn.

## II. Defendants' Motion for Judgment on the Pleadings

■ Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir.2001); *see also Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). The court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Cannon*, 250 F.3d at 1301. The court may consider only the substance of the pleadings and any judicially noticed facts. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998). Thus, "[t]he complaint may not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Slagle v. ITT Hartford*, 102 F.3d 494, 497 (11th Cir.1996)).

Defendants' motion contains three main arguments. First, defendants argue that plaintiffs' narrowing of challenged provisions since the court's order on dismissal has eliminated any preemption claims they might have otherwise had. Specifically, defendants contend that those allegations from the amended complaint that reference language consistent with *Garmon* preemption are no longer at issue in this case. Moreover, they argue that plaintiffs have failed to sufficiently allege, both factually and legally, any other variety of preemption. (Br. in Supp. of Defs.' Mot. for J. on the Pleadings 5–14, ECF No. 28.)

Second, defendants claim that plaintiffs predicate their § 1983 claim on the Supremacy Clause's creating a private right of action, an idea which the Supreme Court recently rejected in *Armstrong v. Exceptional Child Center, Inc.*, ⸺ U.S. ⸺, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015). Third, they attack whether plaintiffs have shown that the NLRA confers an unambiguous right sufficient to support a § 1983 claim. (Br. in Supp. of Defs.' Mot. for J. on the Pleadings 15–22, ECF No. 28.) Plaintiffs respond by pointing out that defendants' arguments were effectively addressed in the court's previous order. (Pls.' Resp. in Opp'n to Mot. for J. on the Pleadings 2, ECF No. 32.)

Regarding first the issue of pleading sufficiency, the court has previously ruled that plaintiffs have stated a viable claim for preemption on at least some sections of the state statute. (Order on Mot. to Dismiss 21–22, ECF No. 24.) The pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),[2] require that "a complaint must contain sufficient factual mat-

---

2. Plaintiffs reference the "notice" pleading standard in their motion for summary judgment and their response to defendants' motion for judgment on the pleadings. This standard no longer applies in federal court. *But see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir.2009) ("Even though the require-ments for pleading a proper complaint are *substantially aimed at assuring that the defendant be given adequate notice* of the nature of a claim being made against him, they also provide for defining issues for trial and for early disposition of inappropriate complaints." (emphasis added)).

ter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

■ Since it did not explicitly do so before, the court now finds that plaintiffs have set forth plausible grounds for federal preemption and relief. *See id.* at 679, 129 S.Ct. 1937 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and *common sense.*" (emphasis added)). In their complaint, plaintiffs outline the roles of the respective parties, the terms of their current bargaining agreements, and the dangers they face from enforcement of the Georgia law. (Am. Compl. ¶¶ 18–20, ECF No. 5.) Next, the complaint points to the relevant Georgia provisions and alleges that the NLRA, specifically outlining 29 U.S.C. § 186(c)(4), "preempts all state laws which purport to regulate voluntary written payroll authorizations from employee wages of dues to labor organizations involved in interstate commerce." *Id.* ¶¶ 27, 31. Defendants' motion fails on this ground.

■ Next, regarding the Supremacy Clause, the court notes that its previous order also addressed this issue. Defendants point to the Supreme Court's recent decision in *Armstrong v. Exceptional Child Center, Inc.* for the proposition that "the Supremacy Clause is not the 'source of any federal rights,' . . . and certainly does not create a cause of action." —— U.S. ——, 135 S.Ct. 1378, 1383, 191 L.Ed.2d 471 (2015) (citations omitted). In its order on

dismissal, this court acknowledged that "Preemption claims under the Supremacy Clause are distinct from § 1983 claims." (*See* Order on Mot. to Dismiss 17, ECF No. 24.) Defendants ignore that plaintiffs base their preemption claims upon the NLRA, not the Supremacy Clause. *See also Golden State Transit Corp. v. City of L.A.*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) ("[T]he NLRA creates 'rights' in labor and management that are protected against governmental interference.") Rather, plaintiffs appear to mention this principle only to the extent that it " 'secure[s] federal rights by according them priority whenever they come in conflict with state law.' " *Id.* at 107, 110 S.Ct. 444 (citation omitted); *see also* 135 S.Ct. at 1383. Defendants' motion fails on this ground as well.

■ Defendants' third and final attack is levied against the NLRA and whether the plaintiffs have appropriately identified a federal right under the statute to establish their § 1983 claim. Like the two preceding arguments, this ground was argued and decided on defendants' motion to dismiss. Yet, for the sake of completeness, the court will now address it again. To state a claim under § 1983, the plaintiff must assert the violation of a "federal right" under a provision that was intended to benefit the putative plaintiff. *Golden State Transit Corp.*, 493. U.S. at 106, 110 S.Ct. 444 ("The interest the plaintiff asserts must not be 'too vague and amorphous' to be 'beyond the competence of the judiciary to enforce.' " (citation omitted)).

In *Golden State Transit Corp.*, the Court found that "the NLRA creates 'rights' in labor and management that are protected against governmental interference" and identified the petitioner employee as "the intended beneficiary of a statu-

tory scheme that prevents governmental interference with the collective-bargaining process." *Id.* at 109, 110 S.Ct. 444. It further reasoned that "[t]he rights protected against state interference, moreover, are not limited to those explicitly set forth in § 7." Thus, the Court held that petitioner was justified in proceeding under § 1983. The court finds this same logic to apply to the plaintiffs in the present case. *See also Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (allowing former employee to pursue § 1983 claim against labor commissioner policy of refusing to enforce California law on behalf of employees subject to collective bargaining agreements containing an arbitration clause).

■ Here, plaintiff labor organizations have specifically asserted the right to engage in the collective bargaining process without state interference as well as the ability to enter into temporarily irrevocable checkoff authorization agreements pursuant to an enumerated exception in federal law. (*See* Order on Mot. to Dismiss 19, ECF No. 24.) With respect to rights conferred by the statute, precedent clearly suggests that plaintiffs' right to complete the collective-bargaining process is sufficiently definite to permit a § 1983 claim. *See Livadas,* 512 U.S. at 132–33, 114 S.Ct. 2068 ("[W]e find strong support in our precedents for the position taken by both courts below that Livadas is entitled to seek relief under 42 U.S.C. § 1983 for the . . . abridgment of her NLRA rights."); *see also Blessing v. Freestone,* 520 U.S. 329, 343, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (noting that the Court in *Livadas* "discerned in the structure of the [NLRA] the very specific right of employees 'to complete the collective-bargaining process and agree to an arbitration clause.'" (citation omitted)).

Likewise, in their complaint, plaintiffs assert that the NLRA "gives workers 'the *right to self-organization,* to form, join, or assist labor organizations, to *bargain collectively through representatives of their own choosing,* and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.'" (Am. Compl. ¶ 45, ECF No. 5 (emphasis added) (quoting 29 U.S.C. § 157).) [3]

In conclusion, the court finds that defendants' assertions are without merit, and

---

3. Defendants have argued in their motion a distinction between *Garmon* and *Machinist* preemption with regard to rights conferred by the NLRA. (Br. in Supp. of Defs.' Mot. for J. on the Pleadings 21–22, ECF No. 28.) Not only has this court previously ruled on this issue but also it notes here that the Supreme Court's "fundamentally different" reference in *Golden State Transit Corp.* served only to mark that the use of economic pressures (i.e., *Machinist* preemption being implicit in the structure of the NLRA) was "no less binding than a rule that is based on the plain meaning of the statute." *See Livadas v. Bradshaw,* 512 U.S. 107, 133–34, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); *see also* Order on Mot. to Dismiss 18–19, ECF No. 24 ("The court is unable to distinguish the rights recognized by the Supreme Court in *Livadas* and the rights plaintiffs seek to vindicate in this case."). The Court did not make this distinction with the intent to subordinate *Garmon* preemption for purposes of § 1983 analysis.

Likewise, defendants' reliance on *Gonzaga University v. Doe*—a case where the Court applied the § 1983 analysis to the Family Education Rights and Privacy Act of 1974 and found that no individual federal right existed—is inapposite. *See* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *see also Livadas,* 512 U.S. at 133, 114 S.Ct. 2068 ("But apart from these *exceptional* cases, § 1983 remains a generally and presumptively available remedy for claimed violations of federal law." (emphasis added) (citations omitted)). The other precedents discussed in this order—not *Gonzaga University*—govern analysis of § 1983 claims under the NLRA. *See Livadas* 512 U.S. 107, 114 S.Ct. 2068, 129

thus it denies their motion for judgment on the pleadings. The court will now address plaintiffs' motion for summary judgment.

## III. Plaintiffs' Motion for Summary Judgment

In reviewing a motion for summary judgment, the court must view "[a]ll evidence ... in the light most favorable to the party opposing the motion for summary judgment." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir.2013) (internal quotation marks omitted). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In their motion, plaintiffs repeat a familiar discussion of the NLRA's occupying the field of labor regulation and state regulation's being largely limited to Section 14(b). (Pls.' Mem. of Law in Supp. of Mot. for Summ. J. 5–7, ECF No. 41-1; *see also* 29 U.S.C. § 164(b).) With that, plaintiffs acknowledge that states *may* regulate union security agreements under this provision but note that checkoff authorizations (like those presently at issue) do not qualify as union security agreements. *See NLRB v. Atlanta Printing Specialties & Paper Prods. Union 527, AFL–CIO*, 523 F.2d 783, 787 (5th Cir.1985) ("It is clear that the dues checkoff provisions are not union security devices but are intended to be an area of voluntary choice for the employee."). Plaintiffs also reassert their theories relating to *Garmon* and *Machinist* preemption and analyze the challenged Georgia provisions.[4] Defendants in response attack once again the sufficiency of plaintiffs' pleadings. This argument, on its third rendition, remains unpersuasive.

■ To mount a facial challenge, the plaintiff bears the burden of showing there are "no set of circumstances under which [the challenged statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir.2013). As such, facial challenges are generally disfavored. *See Wash. State Grange v. Wash. State Republic Party*, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008).

■ Plaintiffs contend that Sections 3(d), 4, and 5 of the Georgia law cannot be applied in a constitutional manner and that they are entirely preempted by the NLRA. O.C.G.A. § 34–6–21(d), –25, –26. Plaintiffs contend that Section 3(d) is *Garmon* preempted for creating a parallel mechanism to enforce federal labor laws, a task

L.Ed.2d 93; *Golden State Transit Corp.*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420.

4.  Plaintiffs have added a new theory regarding Section 301 of the NLRA, 29 U.S.C. § 185, that provides for preemptive federal jurisdiction over suits between employers and labor unions alleging violations of contracts between them. (Pls.' Mem. of Law in Supp. of Mot. for Summ. J. 9, ECF No. 41-1.) As defendants point out in their response, however, this theory cannot apply to the present case as a dispute between employers and labor unions. (Defs.' Opp'n to Mot. for Summ. J. 12–13, ECF No. 44.) The court agrees with this analysis.

which Congress has assigned exclusively to the National Labor Relations Board. (Pls.' Reply in Supp. of Mot. for Summ J. 13–14, ECF No. 45.) Sections 4 and 5 are likewise preempted for being in clear conflict with federal law. *See* 29 U.S.C. § 186(c)(4).

Defendants respond that plaintiffs have failed to meet their burden because not all applications of federal law would conflict with Georgia law. (*See* Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J. 19–20, ECF No. 44.) Namely, they contend that federal law applies only to payroll deductions for "membership dues" while Georgia law applies to "any fee, assessment, or other sum of money whatsoever." Likewise, they point out that not all employees or employers are covered by the NLRA. *Id.*

After further review, the court is not persuaded by this line of reasoning. As plaintiffs have clarified, § 186(c)(4) applies to the deduction of union fees and assessments as well as membership dues. (Pls.' Reply in Supp. of Mot. for Summ J. 10–11, ECF No. 45 (listing cases explaining expansive interpretations of "membership dues").) Indeed, other courts have upheld facial challenges against state statutes with similar breadth. *See Local 514, Transport Workers Union v. Keating*, 358 F.3d 743, 747 (10th Cir.2004) (holding erroneous district court's conclusion that state law not preempted by NLRA); *United Food Workers Local 99 v. Bennett*, 934 F.Supp.2d 1167, 1181–82 (D.Ariz.2013).

Under *San Diego Building Trade Council, Millmen's Union, Local 2020 v. Garmon*, "[w]hen an activity is *arguably* subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (emphasis added). In this case, Section 3(d) seeks to enforce federal law. Similarly, Sections 4 and 5 of the Georgia law regulate conduct that is specifically excepted by the NLRA. *Compare* O.C.G.A. § 34–6–25, –26, *with* 29 U.S.C. § 186(c)(4). More specifically, issues surrounding checkoff authorization are regulated as unfair labor practices under the NLRA. *See, e.g., Atlanta Printing Specialties & Paper Prods. Union 527, AFL–CIO*, 523 F.2d 783, 787 (5th Cir.1985); *NLRB v. Shen–Mar Food Prods. Inc.*, 557 F.2d 396 (4th Cir.1977).

This court agrees that the Georgia statute and federal law are at odds. The Georgia law requires that checkoff authorizations be revocable at will while federal law grants unions the ability to bargain for irrevocable authorizations not to exceed one year. As such, this state law creates potential scenarios whereby labor organizations taking advantage of this affirmative federal exception would be punished under state law.[5]

As the court has noted previously, the most relevant precedent addressing the

---

**5.** Despite regulation determining the boundaries of bargaining in this regard, the NLRA left a window between revocable checkoff authorizations and irrevocable authorizations up to a year that would appear susceptible to a challenge under *Machinist* preemption as well. *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976) (preemption turning on whether Congress intended that the conduct involved be unregulated and "controlled by the free play of economic forces"). In this case, the court could also infer the intent of Congress to leave this range of outcomes to bargaining between the parties.

questions before the court is *SeaPAK v. Industrial, Technical and Professional Employees, Division of National Maritime Union, AFL–CIO.*, 300 F.Supp. 1197 (S.D.Ga.1969) (Lawrence, J.), *summarily aff'd*, 423 F.2d 1229 (5th Cir.1970), *summarily aff'd*, 400 U.S. 985, 91 S.Ct. 452, 27 L.Ed.2d 434 (1971). The court in *SeaPAK* found that a very similar Georgia right-to-work law making checkoff authorizations revocable at will was not compatible with federal law's allowing irrevocable authorizations not to exceed one year. 300 F.Supp. at 1200. It reasoned that the two statutory provisions were "completely at odds" and that "one or the other must give way," adding "[t]hey cannot co-exist." Since the decision in *SeaPAK*, several other courts have adhered to this finding and struck state regulation of checkoff authorizations as preempted by the NLRA. (*See* Pls.' Mem. of Law in Supp. of Mot. for Summ. J. 13 n.6, ECF No. 41-1 (listing cases finding similarly).) The court agrees with this sound precedent and adopts its ruling here.

### IV. Conclusion

In conclusion, defendants' motion for judgment on the pleadings [28] is hereby **DENIED**. Plaintiffs' motion for summary judgment [41] is hereby **GRANTED**. The court hereby declares that sections 3(d), 4, and 5 of Act No. 192 of the Georgia 2013 Session Laws, O.C.G.A. §§ 34–6–21, 34–6–25, and 34–6–26, are preempted by operation of the NLRA and are therefore unenforceable. The clerk is **DIRECTED** to enter judgment for plaintiffs.

IT IS SO ORDERED, this 7th day of July, 2016.